US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

APR 2 8 2021

By

Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### HOT SPRINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO. 6:21CR60015-001 |
| | ) | |
| | ) | |
| STEVEN CURTIS REYNOLDS | ) | |

## INDICTMENT

The Grand Jury charges:

## INTRODUCTION

At all times material to this Indictment unless otherwise set forth, with all date and times alleged to be "on or about" or "in or about," and all amounts alleged to be approximately:

1. Steven Curtis Reynolds (hereinafter "REYNOLDS") was involved in the business of brokering freight shipments and owned and operated Reynolds Shipping USA, LLC. A freight broker is a person or an organization that assists shippers in moving shipments from the point of origin to their destinations by employing the service of carrier companies.

2. Wells Fargo Bank was a federally insured financial institution headquartered in San Francisco, California.  REYNOLDS controlled a checking account with account number ending in 8128 at Wells Fargo Bank in the name of Reynolds Shipping USA, LLC.

3. Bank of America was a federally insured financial institution headquartered in Charlotte, North Carolina.  Merrill Lynch is a subsidiary of Bank of America.  REYNOLDS controlled a cash management account with account number ending in 3603 at Merrill Lynch and a Bank of America checking account with account number ending 1571.

4. Aggregate Mining Process, LLC (hereinafter "AMP"), was a Nevada limited liability company involved in the business of designing and supplying rock crushing and other

heavy equipment for clients, to include iron ore mines and hydroelectric dam projects. AMP was owned and operated by Nathan Myers.

5. From in or about June 2018 to in or about December 2018, REYNOLDS resided in and conducted his freight brokering business from the Western District of Arkansas, Hot Springs Division.

### Wet Belt Project

6. In or about the summer 2018, AMP collaborated with Candor Supply LLC, (hereinafter "Candor") on a contract to provide certain heavy industrial equipment for a project in British Columbia, Canada commonly referred to as the Wet Belt Project. AMP was a subcontractor to Candor but was primarily responsible for hiring vendors to manufacture the equipment and to ship the equipment from the manufacturing location to the project site location.

7. AMP and Candor agreed to make an advance payment of $298,495 to REYNOLDS to broker shipments of equipment for the Wet Belt Project including paying the costs of shipping the equipment.

### Lake Isabella Dam Project

8. In or about the summer of 2018, AMP obtained a contract to provide certain heavy industrial equipment for a project in California commonly referred to as the Lake Isabella Dam Project.

9. AMP agreed to make an advance payment of approximately $530,000 to REYNOLDS to broker the shipment of equipment for the Lake Isabella Dam Project including paying the costs of shipping the equipment.

### SCHEME TO DEFRAUD INVOLVING SHIPPING

10. Beginning on or about an unknown date, but at least as early as in or about June 2018, and continuing at least until on or about December 2018, REYNOLDS knowingly and

intentionally devised, intended to devise and participated in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises involving shipping payments (hereinafter "scheme to defraud involving shipping") and, in furtherance of the "scheme to defraud involving shipping", REYNOLDS did knowingly and willfully transmit and cause to be transmitted, in interstate commerce, wire communications and transmissions.

**MANNER AND MEANS**
**OF THE SCHEME TO DEFRAUD INVOLVING SHIPPING**

11. The manner and means by which REYNOLDS, and others known and unknown, carried out the "scheme to defraud involving shipping" included, but were not limited to the following:

a.      REYNOLDS falsely and fraudulently represented and promised that he would broker and pay the costs for shipping equipment in exchange for advance payments of shipping costs and thereby caused AMP and Candor to make advance payment of shipping costs to REYNOLDS;

b.      REYNOLDS received the advance payment for shipping costs but did not broker and pay the costs for shipping equipment as he promised and represented and instead converted the advance payments of shipping costs to his personal uses; and

c.      REYNOLDS made false and fraudulent representations and promises regarding the shipment of equipment intending thereby to lull Nathan Myers and others into a false sense of security, to postpone inquiries and complaints and to otherwise conceal his fraudulent conduct.

## ACTS IN FURTHERANCE OF THE SCHEME
## TO DEFRAUD INVOLVING SHIPPING

12. In furtherance of the "scheme to defraud involving shipping" and to accomplish its purposes, REYNOLDS, committed and caused to be committed the following acts, among others, in the Western District of Arkansas and elsewhere:

13. In or about the Summer of 2018, REYNOLDS, promised, represented, and agreed to broker and pay the costs for shipping equipment to the Wet Belt Project and the Lake Isabella Dam Project in exchange for advance payment of the shipping costs.

14. On or about July 24, 2018, Candor on behalf of AMP made an interstate wire transfer of $350,000 from a Candor account at J.P. Morgan Chase Bank to the Reynolds Shipping USA LLC Wells Fargo Bank account with account number ending 8128. The interstate wire transfer included the full advance payment of shipping costs of $298,495 for the Wet Belt Project. The beneficiary of the interstate wire transfer was Reynolds Shipping USA LLC 294 Cougar Ter. Hot Springs, Arkansas.

15. REYNOLDS caused Candor to make the interstate wire transfer on behalf of AMP by falsely and fraudulently representing and promising that REYNOLDS would broker and pay the costs for shipping equipment for the Wet Belt Project.

16. After receiving the advance payment of shipping costs of $298,495 from Candor, REYNOLDS spent most of the money on personal expenses and failed to broker and pay for the shipping of equipment to the Wet Belt Project.

17. On or about August 13, 2018, AMP made an interstate wire transfer of $250,000 from an AMP account at Bank of America to REYNOLDS's Merrill Lynch Bank of America account with account number ending 3603. This wire transfer included a partial payment of advance shipping costs for the Lake Isabella Dam Project of $235,000.

18. REYNOLDS caused AMP to make the wire transfer by falsely and fraudulently

representing and promising that REYNOLDS would broker and pay the costs for shipping equipment for the Lake Isabella Dam Project.

19. After receiving the advance payment of shipping costs of $235,000 from AMP, REYNOLDS spent most of the money on personal expenses and failed to broker and pay for the shipping of equipment to the Lake Isabella Dam Project.

20. On August 14, 2018, AMP made an interstate wire transfer of $295,000 from an AMP account at Bank of America to the Reynolds Shipping USA LLC Wells Fargo Bank account with account number ending 8128. This interstate wire transfer was the second and final advance payment toward the approximate $530,000 in shipping costs for the Lake Isabella Dam Project. The beneficiary of the interstate wire transfer was Reynolds Shipping USA LLC 294 Cougar Ter. Hot Springs, Arkansas. The interstate wire transfer contained the statement "Freight Invoice Lake Isabella Dam".

21. REYNOLDS caused AMP to make the interstate wire transfer by falsely and fraudulently representing that REYNOLDS would broker and pay the costs for shipping equipment for the Lake Isabella Dam Project.

22. After receiving the advance payment of shipping costs of $295,000 from AMP, REYNOLDS spent most of the money on personal expenses and failed to broker and pay for the shipping of equipment to the Lake Isabella Dam Project.

23. On October 30, 2018, in reply to an email from a construction manager on the Lake Isabella Project, inquiring when a particular piece of AMP-supplied equipment would arrive at the project site, REYNOLDS sent an email to the construction manager with copy to Nathan Myers stating, "It's being picked up at 1 tomorrow and Thursday afternoon is the best but I can look to put to (sic) drivers in the truck to run 24/7." REYNOLDS representations in this email regarding the shipping of AMP-supplied equipment were false and fraudulent in that, in

truth and fact as REYNOLDS well knew, no arrangements had been made to pick up the equipment the next day and deliver it by Thursday afternoon.

## SCHEME TO DEFRAUD INVOLVING THE JET FUEL REFINERY

24. Beginning on or about an unknown date, but at least as early as in or about July 2018, and continuing at least until on or about October 2018, REYNOLDS knowingly and intentionally devised, intended to devise and participated in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises (hereinafter "scheme to defraud involving the jet fuel refinery") and, in furtherance of the "scheme to defraud involving the jet fuel refinery", REYNOLDS did knowingly and willfully transmit and cause to be transmitted, in interstate and foreign commerce, wire communications and transmissions.

## MANNER AND MEANS OF THE
## SCHEME TO DEFRAUD INVOLVING THE JET FUEL REFINERY

25. The manner and means by which REYNOLDS, and others known and unknown, carried out the "scheme to defraud involving the jet fuel refinery" included, but were not limited to the following:

a. REYNOLDS solicited investments from Michael Pauletto (hereinafter Pauletto) and others by falsely and fraudulently representing that he was going to construct and operate a jet fuel refinery facility in Corpus Christi, Texas.

b. REYNOLDS falsely and fraudulently represented to Michael Pauletto that he had secured a contract with the United States government to purchase jet fuel from the planned jet fuel refinery.

c. After Michael Pauletto invested money in the jet fuel refinery, REYNOLDS made false and fraudulent representations regarding the planned jet fuel refinery, intending and

6

attempting thereby to lull Michael Pauletto into a false sense of security, to postpone inquiries and complaints and to otherwise conceal his fraudulent conduct.

## ACTS IN FURTHERANCE OF THE SCHEME
## TO DEFRAUD INVOLVING THE JET FUEL REFINERY

26. In furtherance of the "scheme to defraud involving the jet fuel refinery" and to accomplish its purposes, REYNOLDS, committed and caused to be committed the following acts, among others, in the Western District of Arkansas and elsewhere:

27. REYNOLDS falsely and fraudulently represented to Michael Pauletto and others that he was going to build a jet fuel refinery in Corpus Christi, Texas and solicited Michael Pauletto and others to invest in the planned jet fuel refinery in exchange for receiving a percentage of the profits.

28. In or about August 2018, REYNOLDS falsely and fraudulently represented to Michael Pauletto and others that he had secured a contract with the United States government to purchase jet fuel from the planned jet fuel refinery (hereinafter U.S. government jet fuel contract), when in truth and in fact as REYNOLDS well knew, he had not secured such a contract.

29. In or about August 2018, REYNOLDS falsely and fraudulently represented to Michael Pauletto that REYNOLDS could not provide Michael Pauletto a copy of the U.S. government jet fuel contract until REYNOLDS obtained a top security secret clearance, when in truth and in fact as REYNOLDS well knew, REYNOLDS could not provide Michael Pauletto a copy of the U.S. government jet fuel contract because no such contract existed.

30. On August 21, 2018, REYNOLDS sent an email to Michael Pauletto stating in part that REYNOLDS expected to receive a "TS clearance" that day which would allow him to send Michael Pauletto a copy of the U.S. government jet fuel contract. The email was an interstate wire communication. The representations made by REYNOLDS in the email regarding

providing Michael Pauletto a copy of the U.S. government jet fuel contract were false and fraudulent in that, in truth and in fact as REYNOLDS well knew, there was no U.S. government jet fuel contract.

31. In or about September 2018, in reliance on REYNOLDS' false and fraudulent representations, Michael Pauletto agreed to invest $260,000 in the planned jet fuel refinery.

32. On or about September 19, 2018, a REYNOLD's employee, on behalf of REYNOLDS, sent an email to Michael Pauletto with copy to REYNOLDS, stating in part "Below is the contact for Aaron Christensen, he is our private banker at Bank Of America. You can contact him and he will help you complete the wire. Let me know if you need anything else from me I am happy to help." This email was an interstate wire communication.

33. On September 19, 2018, REYNOLDS sent an email to a Bank of America employee instructing the employee to "fix" an issue that arose when Michael Pauletto attempted to electronically transfer $260,000 into REYNOLDS' Bank of America account with account number ending in 1571. This email was an interstate wire communication.

34. On or about September 21, 2018, Michael Pauletto invested in the planned jet fuel refinery by making an intra-bank transfer of $260,000 to REYNOLDS' Bank of America account with account number ending 1571.

**COUNTS ONE THROUGH FOUR**
**WIRE FRAUD**
**Title 18, United States Code, Section 1343**

35. Paragraphs 1 through 23 are re-alleged and incorporated herein as if fully set forth in their entirety.

36. Beginning at a time unknown but at least as early as in or about June 2018 and continuing to in or about January 2019 in the Western District of Arkansas, Hot Springs Division and elsewhere, the Defendant, **STEVEN CURTIS REYNOLDS,** devised and intended to devise

a scheme and artifice to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations and promises, namely, the "scheme to defraud involving shipping" as described above.

## EXECUTION OF THE SCHEME TO DEFRAUD INVOLVING SHIPPING

37. On or about the dates listed below, in the Western District of Arkansas, Hot Springs Division, and elsewhere, the Defendant, **STEVEN CURTIS REYNOLDS,** for the purpose of executing the above-described "scheme to defraud involving shipping" transmitted and caused to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, and sounds, that is, the following:

| Count | Date | Wire Transmission |
|---|---|---|
| 1 | July 24, 2018 | Wire transfer of $350,000 from a Candor Supply LLC account at J.P. Morgan Chase to the Reynolds Shipping USA LLC Wells Fargo Bank account with account number ending 8128. |
| 2 | August 13, 2018 | Wire transfer of $250,000 from an AMP account at Bank of America to REYNOLDS's Merrill Lynch Bank of America account with account number ending 3603 |
| 3 | August 14, 2018 | Wire transfer of $295,000 from an AMP account at Bank of America to the Reynolds Shipping USA LLC Wells Fargo Bank account with account number ending 8128. |
| 4 | October 30, 2018 | Electronic mail from REYNOLDS to Nathan Myers stating "It's being picked up at 1 tomorrow and Thursday afternoon is the best but I can look to put to (sic) drivers in the truck to run 24/7" as more fully described in paragraph 18 above |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS FIVE THROUGH SEVEN
### MONEY LAUNDERING
### Title 18, United States Code, Section 1957

38. Paragraphs 1 through 23 and 35 through 37 are re-alleged and incorporated herein as if fully set forth in their entirety.

39. On or about the dates listed below, in the Western District of Arkansas, Hot Springs Division, the Defendant, **STEVEN CURTIS REYNOLDS**, did knowingly engage in and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00 such property having been derived from a specified unlawful activity; namely, wire fraud in violation of Title 18, United States Code, Section 1343, as follows:

| Count | Date | Monetary Transaction |
|-------|------|----------------------|
| 5 | August 14, 2018 | A debit card transaction from the Reynolds Shipping USA LLC Wells Fargo Bank account with account number ending 8128 for payment of $13,413.76 to "Cleos Hot Springs" debited on August 15, 2018 |
| 6 | August 15, 2018 | Check # 13619 drawn on the Reynolds Shipping USA LLC Wells Fargo Bank account with account number ending 8128 in the amount of $26,390 made payable to Thomas Nagin |
| 7 | August 15, 2018 | A debit card transaction from the Reynolds Shipping USA LLC Wells Fargo Bank account with account number ending 8128 for payment of $13,648.70 to "Reynold's Family W" debited on August 17, 2018 |

All in violation of Title 18, United States Code, Section 1957.

## COUNTS EIGHT AND NINE
### WIRE FRAUD
### 18 United States Code, Section 1343

40. Paragraphs 1 through 5 and 25 through 34 are re-alleged and incorporated herein as if fully set forth in their entirety.

41. Beginning at a time unknown but at least as early as July 2018 and continuing to in or about October 2018 in the Western District of Arkansas, Hot Springs Division and elsewhere, the Defendant, **STEVEN CURTIS REYNOLDS,** devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations and promises, namely, the "scheme to defraud involving the jet fuel refinery" as described above.

### EXECUTION OF THE SCHEME TO DEFRAUD
### INVOLVING THE JET FUEL REFINERY

42. On or about the dates listed below, in the Western District of Arkansas, Hot Springs Division, and elsewhere, the Defendant, **STEVEN CURTIS REYNOLDS,** for the purpose of executing the above-described "scheme to defraud involving the jet fuel refinery" transmitted and caused to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, and sounds, that is, the following:

| Count | Date | Wire Transmission |
|---|---|---|
| 8 | August 21, 2018 | An electronic mail from REYNOLDS to Michael Pauletto as more fully described in paragraph 30 above |
| 9 | September 19, 2018 | An electronic mail from an employee of REYNOLDS to Michael Pauletto with copy to REYNOLDS stating in part, "Below is the contact for Aaron Christensen, he is our private banker at Bank Of America. You can contact him and he will help you complete the wire. Let me know if you need anything else from me I am happy to help" as more fully described in paragraph 32 above |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS TEN AND ELEVEN
### MONEY LAUNDERING
### Title 18, United States Code, Section 1957

43. Paragraphs 1 through 5, 25 through 34, and 40 through 42 are re-alleged and incorporated herein as if fully set forth in their entirety.

44. On or about the dates listed below, in the Western District of Arkansas, Hot Springs Division, the Defendant, **STEVEN CURTIS REYNOLDS**, did knowingly engage in and attempt to engage monetary transactions by, through or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00 such property having been derived from a specified unlawful activity; namely, wire fraud in violation of Title 18, United States Code, Section 1343, as follows:

| Count | Date | Monetary Transaction |
|---|---|---|
| 10 | September 21, 2018 | Check # 249 drawn on REYNOLDS' Bank of America account with account number ending in 1571in the amount of $51,337.03 made payable to Riser Ford |
| 11 | September 22, 2018 | Check # 269 drawn on REYNOLDS' Bank of America account with account number ending in 1571in the amount of $23,570.37 made payable to Riser Ford |

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION - WIRE FRAUD COUNTS

45. The allegations contained in Counts One through Four, Eight, and Nine of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging

forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

46. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, the Defendant, **STEVEN CURTIS REYNOLDS**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following: a forfeiture money judgment.

47. If the property described above, as a result of any act or omission of the Defendant:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party:

   c.   has been placed beyond the jurisdiction of the Court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2461(c).

### FORFEITURE ALLEGATION - MONEY LAUNDERING COUNTS

48. The allegations contained in Counts Five through Seven, Ten, and Eleven of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

49. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 or 1957, the Defendant, **STEVEN CURTIS REYNOLDS**, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following: a forfeiture money judgment.

50. If the property described above, as a result of any act or omission of the Defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party:

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A True Bill.

David Clay Fowlkes
Acting United States Attorney

/s/ Grand Jury Foreperson
Grand Jury Foreperson

By:    Graham Jones
Assistant U. S. Attorney
Arkansas Bar No. 2005183
500 N. State Line Ave., Ste. 402
Texarkana, AR  71854
(903) 794-9481
Email: Graham.Jones@usdoj.gov